GLEN, J.
 

 Plaintiff seeks to recover from defendant Milotz and from J. C. Perrigo, County Auditor, and his bondsmen, reporter’s fees alleged to have been illegally allowed by the county auditor and received by Milotz contrary to section 869, Penal Code.
 

 The amended complaint alleges an indebtedness of $1,852.30 to the county of San Diego “. . . for and on account of moneys paid out upon County warrants issued by defendant J. C. Perrigo to defendant W. F. Milotz, Jr. without authorization of law and in violation of the provisions of Section 869 of the Penal Code requiring . . . reduction of compensation by one-half for failure to transcribe, certify and file transcripts upon preliminary examinations in felony cases, together with affidavits as provided in said section within the time provided therein. That an additional sum of twenty (20) per cent, or $370.46, is due plaintiff under the provisions of Government Code Section 26525 as damages for the use of said money. ’ ’
 

 The several defendants each filed general demurrers to the seconded amended complaint which were sustained without leave to amend. The county appeals from the judgment entered thereon.
 

 In their briefs, the parties have devoted their energies entirely to the question whether the provision of section 869, Penal Code, reducing the compensation of the reporter one-half if the transcripts of preliminary examinations are not filed within the time allowed by that section, is mandatory or merely directory.
 

 Upon analysis of the pleadings and the statute under consideration, we perceive further questions that require some comment in view of our reversal of the judgment. Since the complaint specifically alleges defendant’s liability arises out of payment of public funds in violation of section 869, Penal Code, and is not couched in terms of a common count without reference to the statute, the pleading must allege with particularity the precise failure to comply with the statute in order to determine the commencement of the statutory time in which transcripts must be filed.
 

 
 *876
 
 Penal Code, section 869, sets up a complete scheme for the taking, transcribing, and filing of testimony before a magistrate in felony cases. The statute is quite lengthy and divided into seven subdivisions and must be construed as a whole. The provisions pertinent to this inquiry are as follows:
 

 “The testimony of each witness in cases of
 
 homicide
 
 must be reduced to writing, as a deposition, by the magistrate, or under his direction, and in
 
 other cases
 
 upon the demand of the prosecuting attorney, or the defendant, or his counsel. The magistrate before whom the examination is had may, in his discretion, order the testimony and proceedings to be
 
 taken
 
 down in shorthand in all examinations herein mentioned, and for that purpose he may appoint a shorthand reporter. . . .
 

 “Fifth—The reporter shall, within ten days after the
 
 close
 
 of such examination,
 
 if
 
 the defendant be held to answer the charge,
 
 transcribe
 
 his said shorthand notes, . . . and file both said original and copy with the county clerk of the county, or city and county, in which the defendant was examined. The reporter shall,
 
 before
 
 receiving
 
 any
 
 compensation as such reporter, file with the auditor of the county his affidavit setting forth that said transcriptions have been filed with said county clerk
 
 within
 
 the time herein provided for. The compensation of the reporter for any services rendered by him as such reporter in any court of this State shall be
 
 reduced one-half
 
 if the provisions of this section as to the
 
 time
 
 of filing said transcript
 
 have not
 
 been complied with by him. . . .
 

 ‘ ‘ Seventh—If said transcript
 
 is
 
 filed within the time herein-before provided for, the reporter shall be entitled to receive the compensation fixed and allowed by law to reporters in the superior courts of this State.” (Emphasis added.)
 

 Except in homicide cases wherein the defendant is held to answer, the statute does not require the testimony taken at a preliminary hearing be reduced to writing and filed except upon the demand of the prosecuting attorney, or the defendant, or his counsel.
 
 (Kalloch
 
 v.
 
 Superior Court,
 
 56 Cal. 229;
 
 People
 
 v.
 
 Smith,
 
 59 Cal. 365;
 
 People
 
 v.
 
 Brooks,
 
 72 Cal.App.2d 657 [165 P.2d 51].) In
 
 People
 
 v.
 
 Smith, supra,
 
 the defendant was charged with robbery and was held to answer without a transcript of the testimony being filed, the magistrate merely endorsing his order holding the defendant upon the complaint which he styled “a deposition.” Upon denial of the defendant’s motion to dismiss in the superior court he appealed. At page 366 the Supreme Court says:
 

 “According to the provisions of the Penal Code, a person,
 
 *877
 
 when arrested on a charge of having committed a public offense, must be examined before a magistrate. (See Penal Code, §§ 858-863.) . . .
 

 “It is provided by Section 869, as to this examination, that ‘the testimony of each witness,
 
 in cases of homicide,
 
 must be reduced to writing as a deposition, by the magistrate or under his direction, and, m
 
 other cases,
 
 upon the demand of the prosecuting attorney, or the defendant or his counsel. ’ The same section prescribes the manner in which the deposition shall be taken, when the testimony is in that form. This is the only requirement as to the reduction of the testimony to writing. ’ ’
 

 In
 
 People
 
 v.
 
 Brooks, supra,
 
 defendants were convicted of burglary. They contended they had no preliminary hearing and were not represented by counsel and that there was no transcript of the proceedings filed in the superior court. At page 660 of the decision the court remarks:
 

 “Nor is it necessary, except in homicide eases, that the proceedings be taken down in shorthand and transcribed by a court reporter. (Pen. Code, § 869;
 
 People
 
 v.
 
 Williams,
 
 129 Cal.App. 504 [19 P.2d 37].) . . .
 

 “Seemingly they (the defendants) were content to rely on the absence of a reporter’s transcript of the proceedings before the committing magistrate from the files of the superior court. As this was a case in which burglary, not homicide, was charged, the presence of a reporter was not required by law so the absence of a reporter’s transcript was not evidence supporting their contention that they had been committed without a preliminary examination. ’ ’
 

 In
 
 Kalloch
 
 v.
 
 Superior Court, supra,
 
 the magistrate proceeded with the examination, and after hearing the oral statements of witnesses committed the petitioner for trial. The petitioner having been charged with murder, the information was dismissed because no transcript was prepared.
 

 Until a defendant is held to answer, no transcript need be prepared, and if one is prepared without defendant being held to answer, the reporter is not entitled to any compensation.
 

 In
 
 Mattingly
 
 v.
 
 Nichols,
 
 133 Cal. 332 at page 334 [65 P. 748], it is said:
 

 “We think, however, that the code does not contemplate, much less require, the shorthand notes of the reporter to be transcribed, where the accused has been discharged. Subdivision 5 of section 869 of the Penal Code provides: ‘The
 
 *878
 
 reporter shall, within ten days after the close of such examination (if the defendant be held to answer to the charge), transcribe into longhand writing his said shorthand notes, and certify and file the same with the county clerk of the county, or city and county, in which the defendant was examined, and shall in all cases file his original notes with said clerk. ’ If it was the intention of the legislature to require the reporter’s notes to be transcribed and filed with the original notes in cases where the accused is discharged, as well as in cases where he is held to answer, it would have been easy to say so. No distinction whatever would have been made. It is not material to inquire whether the transcribed notes could or would have been of any use; the question, as final ly stated in the reply brief, is, whether appellant is entitled to pay, having performed the service upon the demand of the accused and under the order of the examining magistrate. But neither the state nor the county can be charged with a liability,
 
 unless it is authorised by law.
 
 No discretion is vested in the justice of the peace in the matter. His authority must be found in the statute, if he has it, and we do not find any. ’ ’ (Emphasis added.)
 

 A magistrate is a statutory official. His powers and duties are thus limited by statute. He may order a transcript written and filed only as authorized by statute. Thus in
 
 Fursdon
 
 v.
 
 County of Los Angeles,
 
 100 Cal.App.2d Supp. 845 [223 P.2d 520], it is held:
 

 “A judge of a municipal court, acting as a magistrate in holding a preliminary examination of a felony charge, had no authority, where defendant was not held to answer but the charge against him was dismissed, to order the phonographic reporters to make a daily transcript consisting of an original and six copies and to make such services a charge against the county. ’ ’
 

 At page 850 the court observes:
 

 “ ‘This office of magistrate is purely a statutory one, “and the powers and duties of the functionary are solely those given by statute.” (Citing cases.), Even a justice of the supreme court, or a judge of the superior court, if he sees fit to assume the duties of a committing magistrate, “is not accompanied in the discharge of those functions by any of the general or implied powers . . . which surround him when sitting as a court of record. ” . . . ’
 

 “Prom these cases we conclude that, whatever may be the inherent powers of the court from which a magistrate comes
 
 *879
 
 to conduct a preliminary examination, those powers do not inhere in him while he is acting as such magistrate. Indeed, this conclusion is at least implied in the opinion in
 
 Mattingly
 
 v.
 
 Nichols, supra,
 
 (1901) 133 Cal. 332. ...”
 

 We are of the opinion that upon a careful reading of section 869, Penal Code, and consideration of the eases above cited, the complaint in this case is demurrable for failure to allege whether the preliminary hearings in question were or were not homicide cases and the defendant held to answer; and in other felony cases whether or not a demand for a transcript was made by the prosecuting attorney, or the defendant, or his counsel; also, the date of the close of the preliminary hearing; the failure to file the transcript within ten days from that date; and the failure of the reporter to file the affidavit required by section 869 before receiving payment. It would seem to us that such allegations are essential to determine from the pleading when and if the 10-day period in which the reporter must file the transcript under proper circumstances had expired before a cause of action may be stated for recovery of public funds disbursed contrary to the statute.
 

 Plaintiff, therefore, should have been given an opportunity to file an amended complaint unless the provisions relating to reduction of compensation of the reporter in section 869, Penal Code, are directory only as contended by the defendants.
 

 The question thus becomes, assuming proper pleadings, whether public funds disbursed to the defendant, Milotz, as a reporter, by the defendant, Perrigo, the County Auditor, in disregard of the provisions of section 869, Penal Code, are recoverable from the reporter as unlawfully disbursed and, further, whether or not the county auditor and his bondsmen are liable for such disbursements under section 26525 of the Government Code, which provides:
 

 1 ‘ If the board of supervisors without authority of law orders any amount paid as salary, fees, or for any other purposes and the money is actually paid,
 
 or if any county officer draws any warrant in his own favor or in favor of any other person without authorization by the board or law and the warrant is paid,
 
 the district attorney shall institute suit in the name of the county to recover the money paid, and 20 percent damages for the use thereof. If the money has not been paid on the order or warrants, the district attorney upon receiving notice thereof shall commence suit in the name of the county
 
 *880
 
 to restrain the payment. An order of the board is not necessary in order to maintain the suits.” (Emphasis added.)
 

 Section 869 of the Penal Code is not ambiguous or uncertain in its language. Hence there is no room for construction in derogation of its plain terms.
 
 (In re Miller,
 
 31 Cal.2d 191 [187 P.2d 722];
 
 Ross
 
 v.
 
 City of Long Beach,
 
 24 Cal.2d 258 [148 P.2d 649].) Even if it were ambiguous and hence in need of construction, the object of such construction is to ascertain the intent and purpose of the Legislature. In arriving at a conclusion in this regard, the legislative history of the statute and the objective of the Legislature should be given consideration, and the statute so construed as to give effect to the legislative purpose.
 
 (Baugh
 
 v.
 
 Rogers,
 
 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043];
 
 Gartner
 
 v.
 
 Roth,
 
 26 Cal.2d 184 [157 P.2d 361].)
 

 The fifth subdivision of section 869, Penal Code, requiring the filing of the reporter’s transcript within 10 days after the close of the preliminary examination, appears to have been added to the section in 1881, as follows:
 

 “. . . The reporter shall, within ten days after the close of such examination, if the defendant be held to answer the charge, transcribe into longhand writing his said shorthand notes, and certify and file the same with the County Clerk of the county, or city and county, in which the defendant was examined, and shall, in all eases, file his original notes with said Clerk.”
 

 In
 
 People
 
 v.
 
 Grundell
 
 (1888), 75 Cal. 301 [17 P. 214], and
 
 People
 
 v.
 
 Buckley
 
 (1904), 143 Cal. 375 [77 P. 169], it was decided that the provision of section 869, Penal Code, requiring the filing of the transcript within 10 days was directory only, and that such a transcript could be read in evidence against a defendant if filed within a reasonable time after he was held to answer.
 

 The section was again amended in 1919 to add the following:
 

 “. . . The reporter shall receive no compensation for any services rendered by "him as such reporter in any court of this state until the provisions of this section have been, by him, complied with, and shall, before receiving any compensation as such reporter, file with the auditor of the county his affidavit setting forth that said transcriptions, herein provided for, have been filed as herein required. ”
 

 In 1927 there was a further amendment to the section which is substantially the present section since the 1933 amendment
 
 *881
 
 changed provisions of no interest in this case. In 1927 the following was added:
 

 “. . . The compensation of the reporter for any services rendered by him as such reporter in any court of this state shall be reduced one-half if the provisions of this section as to the time of filing said transcript have not been complied with by him.”
 

 It is quite apparent from the legislative history of said Penal Code section that the Legislature sought to require prompt filing of transcriptions of preliminary hearings in felony cases by first requiring in 1881 that they be filed within 10 days, and by denying the reporter any compensation until the transcripts were filed by the amendment of 1919 and then by reducing the compensation to one-half by the 1927 amendment. Especially is this true when we consider our constitutional and statutory provisions long existing in this state having as their main objectives the guarantee of a speedy trial to those accused of crime.
 

 We must assume the Legislature had in mind the decisions announced in
 
 People
 
 v.
 
 Grundell
 
 and
 
 People
 
 v.
 
 Buckley, supra,
 
 when it amended section 869, Penal Code, in 1919 and 1927 and had some sound reason for the amendments.
 

 When a statute is amended to abolish an evil or to correct a practice in existence, effect must be given to each section, phrase and word of the amendment. Likewise, where a statute or an amendment thereto prescribes the consequence to follow or a penalty for failure to act in time, the limitation is ordinarily mandatory and not directory.
 

 In
 
 Thomas
 
 v.
 
 Driscoll,
 
 42 Cal.App.2d 23 [108 P.2d 43], an amendment to section 657, Code of Civil Procedure, having to do with orders granting new trials, was under consideration. The amendment was held to be mandatory and as having-been made to cure an existing evil. The court, at page 26, has this to say:
 

 “Moreover, the provision that ‘it will be conclusively presumed that the order was not based upon’ the insufficiency of the evidence, unless the order be so written and filed, indicates that the legislature intended that for the order to be effective, it must be filed within ten days. Also, the use of the imperative auxiliary ‘shall’ signified a command (57 Cor. Jur. 548). Although imperative words are sometimes held to have only a directory meaning, this rule of interpretation is not applicable when a consequence or penalty is provided for a failure to do the act commanded. This is a California
 
 *882
 
 rule and is supported by the weight of authority in other jurisdictions. In
 
 Shaw
 
 v.
 
 Randall,
 
 15 Cal. 384, where the court, in disposing of a contention that the statute was directory only, said: ‘In construing the statute we must look to the language used and endeavor, if possible, to ascertain the intention of the Legislature . . . where a consequence is attached to a failure to comply . . . the consequence can be avoided only by compliance with the statute. ’ This was followed in
 
 Perine
 
 v.
 
 Forbush,
 
 97 Cal. 305 [32 P. 226], and in
 
 McCrea
 
 v.
 
 Haraszthy,
 
 51 Cal. 146. The same doctrine is applied by the courts of Missouri in
 
 Hudgins
 
 v.
 
 Mooresville Consol. School Dist.,
 
 312 Mo. 1 [278 S.W. 769], and in
 
 Ousley
 
 v.
 
 Powell,
 
 (Mo.App.) 12 S.W.2d 102.”
 

 In
 
 Whitley
 
 v.
 
 Superior Court of Los Angeles County,
 
 18 Cal.2d 75 [113 P.2d 449],
 
 Thomas
 
 v.
 
 Driscoll, supra,
 
 is approved and the above language quoted by the Supreme Court. The court said at page 79:
 

 “Another circumstance to be noted in our consideration of the intended character of this statutory language is the fact that a penalty is attached to a failure to act in time. The well-established principle of construction that where consequences are attached to a failure to act in accordance with legislative direction, such direction is mandatory, was recognized in the recent case of
 
 Thomas
 
 v.
 
 Driscoll,
 
 ...”
 

 The Supreme Court again approved the holding of the Driscoll ease in
 
 Carbone
 
 v.
 
 Superior Court of Napa County,
 
 18 Cal.2d 768, where at page 771 [117 P.2d 872, 136 A.L.R 1260] the court says:
 

 “The legislature in adopting the amendment presumably had these decisions in mind and intended to change the law.
 
 (Whitley
 
 v.
 
 Superior Court,
 
 18 Cal.2d 75. . . . See
 
 Thomas
 
 v.
 
 Driscoll,
 
 42 Cal.App.2d 23 . . .)”
 

 See, also,
 
 Hammond
 
 v.
 
 McDonald,
 
 49 Cal.App.2d 671 at page 681 [122 P.2d 332];
 
 Garrison
 
 v.
 
 Rourke,
 
 32 Cal.2d 430 at page 435 [196 P.2d 884].
 

 Respondents cite many decisions holding imperative words such as “shall” and “must” to have only a directory meaning. However broad these interpretations may appear, such authorities are not applicable here. As was said in
 
 Rosenfield
 
 v.
 
 Vosper,
 
 70 Cal.App.2d 217 at page 223 [160 P.2d 842], wherein the court quoted from
 
 Thomas
 
 v.
 
 Driscoll, supra,
 
 and emphasizes the following language:
 

 “ ‘ . . Although imperative words are sometimes held to have only a directory meaning, this rule of interpretation
 
 *883
 
 is not applicable when a consequence or penalty is provided lor a failure to do the act commanded. This is” a California rule and is supported by the weight of authority in other jurisdictions.” ’ The statute here is so clear that it leaves no room for interpretation. The law with reference to the determination of the question of disqualification, as it existed prior to 1927, was inadequate and unsatisfactory in many respects. The practice has been entirely changed.”
 

 The same reasoning might well be applied to the legislative changes in section 869 of the Penal Code.
 

 Defendant Milotz strenuously contends that the provisions of the statute requiring the filing of a preliminary transcript within 10 days of the close of the hearing are directory only for the reason that many cases may arise wherein it would be impossible for the reporter to comply with the 10-day provision concerning the preparation and filing of transcripts.
 

 As we read section 869, Penal Code, no discretion is given the magistrate or auditor or anyone else to apply the withholding provisions of the section. The auditor’s duty is plain and so is the reporter’s. The magistrate may appoint a reporter to take down the testimony (apparently to relieve himself of the duty of making a longhand deposition), but is given no discretion to extend the time in which it must be prepared and filed.
 

 Many acts required by law to be done within a specified time may and do become difficult, or seemingly even impossible of performance, but that possibility alone does not confer discretion to extend the plain time limit set up by the Legislature. Where an act is impossible of performance, implied exceptions are recognized to mandatory requirements, but such exceptions are based upon impossibility.
 

 In
 
 Rose
 
 v.
 
 Knapp,
 
 38 Cal.2d 114 at page 117 [237 P.2d 981], the court considers the subject of impossibility of performing a statutory duty within the time prescribed, and has this to say:
 

 “The provision of section 583, requiring dismissal if an action is not brought to trial within five years after the filing of the complaint unless the parties have stipulated for an extension of the period is mandatory, but it is subject to implied exceptions. As stated in
 
 Christin
 
 v.
 
 Superior Court,
 
 9 Cal.2d 526, 532-533 [71 P.2d 205, 112 A.L.R. 1153] ‘The purpose of the statute is plain: to prevent
 
 avoidable
 
 delay for too long a period. It is not designed arbitrarily to close the
 
 *884
 
 proceeding at all events in five years . . and one exception has been recognized ‘where, for all practical purposes, going to trial would be impossible, whether this was because of total lack of jurisdiction in the strict sense, or because proceeding to trial would be both impracticable and futile.’ (Cases cited.) What is impossible, impracticable or futile must, of course, be determined in the light of the facts of the particular ease. ’ ’
 

 In any event, defendant Milotz’s argument in this respect is addressed to the Legislature, not to the courts, and we again may assume that the Legislature in arriving at the 10-day period of time given to the reporter in which to prepare and file a preliminary transcript, balanced the inconvenience and hardship upon the reporter against the constitutional and statutory objective guaranteeing one accused of crime a speedy trial. The possibility of more than 10 days in jail for one charged with a felony and unable to post bail while awaiting a transcript of his preliminary hearing must have weighed heavily with the Legislature. Those charged with felonies, whether in custody or not, cannot be expected to await the pleasure of the court reporter.
 

 Even though the provisions of section 869, Penal Code, limiting the reporter to half compensation in proper cases, are mandatory, may the county recover moneys actually disbursed contrary to that section from the reporter as well as from the county auditor and his bondsmen
 
 1
 
 We believe the plaintiff may recover from both the reporter and the auditor and his bondsmen.
 

 Defendants contend that since the Penal Code section permits only a withholding of the funds that that power was lost and dissipated when the payments were actually made. With this contention we cannot agree. They assert the section provides a penalty and also the method of its application, namely, withholding the compensation which is the exclusive remedy. Reliance is placed upon
 
 County of Alameda
 
 v.
 
 Freitas,
 
 8 Cal.App.2d 653 [48 P.2d 165], In that case, there was an effort made to collect money paid a contractor that should have been withheld as a penalty for failure to pay workmen on a public works project at prevailing rates. The court held the remedy of withholding was exclusive, and upon failure to withhold the county could not recover back the moneys paid. The court reasoned that the method prescribed by the enabling statute was exclusive (Public Works Wage Rate Act, Stats. 1931, chap. 437), and since it was not followed the action failed. In the present case, the action pro
 
 *885
 
 eeeds in exact compliance with the method prescribed by section 26525 of the Government Code. Therefore, the Freitas ease, so far as the form of action is concerned, supports the validity of the amended complaint. As stated in the Freitas case,
 
 supra,
 
 “. . . when a statute gives a penalty and prescribes the form of remedy for its recovery, that form is exclusive; . . ..” No reference is made in that decision to section 26525 of the Government Code or its predecessor (Pol. Code, § 4005b), but only to the Public Works Wage Rate Act.
 

 In the instant case, section 869, Penal Code, as pointed out above, confers no discretion on the reporter or the auditor or the magistrate. The remedy is in effect not a withholding but a reduction of compensation of one-half for failure to comply with the statute, and the county is proceeding in exact compliance with the method prescribed by section 26525 of the Government Code.
 

 The Supreme Court, in
 
 Miller
 
 v.
 
 McKinnon,
 
 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570], deals with section 26525, Government Code. The case holds that not only persons receiving money paid out without authority in law may be sued by the county or by the district attorney or by a taxpayer, but also that those officials who affirmatively participate in illegal payments are proper parties defendant.
 

 We do not find the Freitas and the McKinnon decisions,
 
 supra,
 
 to be in conflict. Considered together, they support the position of the county upon a proper construction of section 869, Penal Code, and section 26525, Government Code. It is to be noted, also, that the McKinnon case goes beyond the remedy prescribed by section 26525 of the Government Code, and indicates that independent of the statute a cause of action exists to recover at least from the recipient public funds illegally disbursed. The court uses the following language
 
 (Miller
 
 v.
 
 McKinnon, supra,
 
 at page 95):
 

 “It has been intimated either directly or indirectly that section 4005b (predecessor of Section 26525, Government Code) in effect creates a cause of action for money illegally expended against the person to whom paid. (Citing cases.) It cannot be doubted that unless some substantive right is established by section 4005b then there is no basis for the recovery of the 20 per cent penalty in addition to the money illegally received, provision for which is made in that section. We believe that it must be conceded that that section at least recognizes the existence of such a cause of action. As heretofore pointed out, however, a cause of action exists to recover from
 
 *886
 
 the person, receiving the money illegally paid, independent of any statute, and it is also clear that the action may be prosecuted by a taxpayer in his name on behalf of the public agency. ’ ’
 

 In
 
 Aebli
 
 v.
 
 Board of Education,
 
 62 Cal.App.2d 706 [145 P.2d 601], it is held:
 

 “Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.”
 

 “If money is paid out by mistake by the state or an agency of government (whether by mistake of fact or mistake of law) it can be recovered back in many instances where, if paid out by an individual or by a private corporation, it could not be.”
 

 “In the absence of unusual circumstances an illegal payment of public funds cannot be ratified, nor can recovery be estopped.”
 

 “Estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances.”
 

 At page 725, et seq., of the decision, the court quotes at great length the language of a recent case in Massachusetts,
 
 Norfolk County
 
 v.
 
 Cook,
 
 211 Mass. 390 [97 N.E. 778, Ann.Cas. 1913B 650], and cites many leading cases from other jurisdictions, holding generally that public funds paid out erroneously or illegally may be recovered, and that ordinarily the government is not estopped except under most unusual circumstances. (See, also,
 
 Foster
 
 v.
 
 Pension Board of the City of Alameda,
 
 23 Cal.App.2d 550 [73 P.2d 631];
 
 Miller
 
 v.
 
 City of Martinez,
 
 28 Cal.App.2d 364 [82 P.2d 519].)
 

 It is urged upon us by the defendants that 869 Penal Code, reducing the reporter’s compensation to one-half in the event the transcription is not filed within 10 days is a penalty, and if not a penalty the section fixed two standards of compensation, namely, full compensation when the transcript is properly filed and half compensation when it is not properly filed, and since penalties are not favored in the law, the plaintiff should not be permitted recovery.
 

 We do not so construe the statute. It does not provide for a penalty but for reduction of compensation for work not performed within the time required by law. Nor does the statute fix two measures of compensation for reporters. The measure of compensation is fixed by paragraph “Seventh” of the statute quoted,
 
 supra,
 
 and if the
 
 *887
 
 services are not properly performed it is reduced to one-half by paragraph “Fifth” of the section.
 

 Statutory or constitutional authority for compensation for official services rendered is necessary. Otherwise it cannot legally be paid, however beneficial the services performed may be. Compensation statutes are to be strictly construed in favor of the government. (See 21 Cal. Jur. 942, Public Officers, § 119; 43 Am.Jur. 134, 135, Public Officers, § 341.)
 

 “Any right which a public officer may have to a salary or compensation must generally be found in some provision of the law
 
 (Citing—Realty Associates Securities Corp.
 
 v.
 
 O’Connor,
 
 295 U.S. 295 [55 S.Ct. 663, 79 L.Ed. 1446];
 
 Nicholas
 
 v.
 
 United States,
 
 257 U.S. 71 [42 S.Ct. 7, 66 L.Ed. 133];
 
 South Dakota
 
 v.
 
 Collins,
 
 249 U.S. 220 [39 S.Ct. 261, 63 L.Ed. 572];
 
 United States
 
 v.
 
 Van Duzee,
 
 185 U.S. 278 [22 S.Ct. 645, 64 L.Ed. 909]) for whatever may be the character of the compensation, whether an annual salary, a per diem allowance, or fees for particular services, it must depend upon the will of the people speaking through their Constitution, statutes, or ordinances.” (43 Am.Jur. 134, 135, Public Officers, § 341.)
 

 In
 
 Realty Associates Securities Corp.
 
 v.
 
 O’Connor, supra,
 
 Mr. Justice Cardozo, speaking of referees in bankruptcy, said:
 

 “Like public officers generally, they must show clear warrant of law before compensation will be owing to them for the performance of their public duties.”
 

 The same judge said in
 
 People ex rel. Rand
 
 v.
 
 Craig,
 
 231 N.Y. 216, 221 [131 N.E. 894] :
 

 “We have felt it our duty, however, when obscurity has engendered doubt to fall back upon the fundamental principle that only clear warrant of law will justify the assumption of a power to control the public purse
 
 (Stetler
 
 v.
 
 McFarlane,
 
 230 N.Y. 400, 408 [130 N.E. 591]).”
 

 In
 
 United States
 
 v.
 
 Van Duzee,
 
 185 U.S. 278 [22 S.Ct. 645, 64 L.Ed. 909], the court said:
 

 “As said by Mr. Justice Jackson in
 
 United States
 
 v.
 
 Shields,
 
 153 U.S. 88, 91 [14 S.Ct. 735, 38 L.Ed. 645]: ‘Fees allowed to public officers are matters of strict law, depending upon the very provisions of the statute. They are not open to equitable construction by the courts, nor to any discretionary action on the part of the officers. ’ ’ ’
 

 Numerous California decisions follow the same rule of strict construction in construing statutes authorizing payment
 
 *888
 
 of public funds for services rendered. (See
 
 City of Corona
 
 v.
 
 Merriam,
 
 20 Cal.App. 231 [128 P.
 
 769]; Woods
 
 v.
 
 Potter,
 
 8 Cal.App. 41 [95 P. 1125];
 
 Sarter
 
 v.
 
 Siskiyou County,
 
 42 Cal.App. 530 [183 P. 852];
 
 Greene
 
 v.
 
 Town of Lakeport,
 
 74 Cal.App. 1 [239 P. 702].)
 

 We turn now to further contentions of the defendant auditor and his bondsmen not heretofore considered. They point out that even though the reporter may be liable as a recipient of the funds, the auditor is not, since the complaint contains no allegation of fraud or connivance on his part, and, further, that the auditor could not be liable for 20 percent damag’es as provided in section 26525 of the Government Code because there are no allegations, nor could it be proven, they had the use of any of the funds disbursed. While it may be that the auditor would not be liable for 20 per cent damages as provided in the Government Code section, we believe the remedy therein provided is severable and the trial court may well award a judgment for public funds disbursed against the auditor without necessarily ordering a penalty for the use thereof when no use is alleged or proven.
 

 Section 26525, insofar as pertinent to the additional contentions of the auditor, provides:
 

 “. . . or if any county officer
 
 draws any warrant
 
 in his own favor or in favor of any other person
 
 without authorization by the board or law and the warrant is paid,
 
 the district attorney shall institute suit in the name of the county to recover the money paid, and 20 percent damages for the use thereof.” (Emphasis added.)
 

 As authority for the auditor’s contention that although the recipient of public funds may be liable, the public officer authorizing the payment is not liable without a showing of fraud, he cites
 
 Ventura County
 
 v.
 
 Clay,
 
 119 Cal. 213 [51 P. 189];
 
 County of Santa Barbara
 
 v.
 
 Janssens,
 
 177 Cal. 114 [169 P. 1025, L.R.A. 1918C 558];
 
 County of Santa Cruz
 
 v.
 
 McPherson,
 
 133 Cal. 282 [65 P. 574];
 
 County of Alameda
 
 v.
 
 Evers,
 
 136 Cal. 132 [68 P. 475];
 
 Thiel Detective Co.
 
 v.
 
 County of Tuolumne,
 
 37 Cal.App. 423 [173 P. 1120].
 

 In
 
 Miller
 
 v.
 
 McKinnon, supra,
 
 there is language used indicating that not only the recipient of the illegal funds, but also the supervisors who participated in ordering the illegal payments, were proper parties to the litigation. However, in that case, the supervisors who had authorized the payment of the funds were charged with fraud and connivance with
 
 *889
 
 the recipient of the illegal payments. The auditor was not a party to that litigation.
 

 In
 
 Ventura County
 
 v.
 
 Clay, supra,
 
 the district attorney instituted suit on behalf of the county to recover from the treasurer and his bondsmen moneys alleged to have been paid on illegal claims, together with a penalty of 20 per cent upon the amount paid. It was held that section 8 of the County Government Act authorizing the district attorney to institute such suits without order of the board of supervisors contemplated an action brought against the recipient of the funds only, and had no application to an action brought on the bond of the county treasurer, and that the district attorney had no authority to bring such an action unless ordered to do so by the board of supervisors.
 

 In
 
 County of Santa Barbara
 
 v.
 
 Janssens, supra,
 
 an action wás brought against the sheriff to recover moneys paid to a deputy illegally appointed. The court held that although the sheriff approved and requested the allowance of such claim by the board of supervisors, the money which was paid without authority of law was not paid to him, and neither the sheriff nor his surety was liable in an action brought to recover the amount under section 4005b of the Political Code (now Gov. Code § 26525).
 

 The most recent decision considering this subject is
 
 Galli
 
 v.
 
 Brown,
 
 110 Cal.App.2d 764 [243 P.2d 920], in which it was held that at common law a public officer is not liable for mistakes or errors made in good faith within the scope of his authority and without corruption; and that, further, section 26525 of the Government Code authorizes the district attorney to bring an action against the recipient only, but not against the person allowing the same, to recover for the county moneys unlawfully paid. At page 778, the court, speaking through Mr. Justice Peters, has this to say:
 

 “The district attorney is authorized to bring suit against persons unlawfully receiving money to recover the money paid, plus a penalty. (Gov. Code, § 26525.) This action lies against the person receiving the money, not the person allowing it.
 
 (County of Santa Barbara
 
 v.
 
 Janssens,
 
 177 Cal. 114 [169 P. 1025, L.R.A. 1918C 558];
 
 Merriam
 
 v.
 
 Board of Supervisors,
 
 72 Cal. 517 [14 P. 137].) There may be other sections dealing with the same subject matter, but we have found no general law, and have been referred to none, imposing liability on a county officer who in good faith erroneously allows a claim where money is available to pay it.
 

 
 *890
 
 . . The complaint here involved does not charge bad faith on the part of Brown, and without such an allegation the complaint is fatally defective—a point that can be raised at any time. ’
 
 ’
 

 Under Penal Code, section 869, it is solely and only the duty of the auditor to pass upon, allow and approve, and order paid, the compensation of the reporter for any services rendered by him pursuant to that section.
 

 Under section 26525, Government Code, if the warrants are drawn without authorization of law, it would appear that the auditor would be liable for the money paid out on the warrant drawn without authority. What is said in
 
 Galli
 
 v.
 
 Brown, supra,
 
 must be taken in consideration with the facts there involved. The invalidity of the claim held to be illegal was based not on the legality of the work done, but on the legality of the employment of a public employee by a city attorney; the employment was not under the jurisdiction or control of the auditor either in fact or in law. Furthermore, the controller (corresponding to the auditor here) was adjudged not liable by the trial court and no appeal was taken from that judgment. The city attorney, on the other hand, was held liable by the trial court for the payment of compensation to an employee illegally hired contrary to the charter provisions of the city of San Francisco and he alone appealed. It follows, therefore, that what was therein said about the liability of the controller (auditor) was dicta and the cases there cited are clearly distinguishable from the present case. The statement made in
 
 Galli
 
 v.
 
 Brown, supra,
 
 cites as supporting authorities
 
 County of Santa Barbara
 
 v.
 
 Janssens, supra,
 
 and
 
 Merriam
 
 v.
 
 Board of Supervisors, supra.
 
 The Janssens case involved the liability of a sheriff, not the auditor. The Merriam case holds that a taxpayer could not maintain an injunction against the board of supervisors to restrain them from examining or ordering paid certain claims on the ground that they were not valid demands against the county. The facts of those cases would seem to give but slight support to the general statement in
 
 Galli
 
 v.
 
 Brown, supra,
 
 to the effect that action lies against the person receiving the money, not the person allowing it. In the instant case, it was the plain duty of the auditor, not the board of supervisors, or any other officer, to allow, approve and order paid the claims of the reporter under section 869, Penal Code, and to require the reporter to file an affidavit setting forth
 
 *891
 
 that the transcriptions had been filed with the county clerk within the time provided by Penal Code, section 869. It is the failure to perform this statutory duty that makes him liable for the illegal expenditure.
 

 An auditor who draws the warrant without authority of law is liable without specific statutory liability for the disbursements made, even though he did not receive any of the funds disbursed, because it is his general statutory duty to order, examine, allow, and order paid, only valid claims against the county.
 

 The auditor’s general statutory duty is set forth in sections 29803 and 29804 of the Government Code (formerly Pol. Code, § 4091). Section 29804 reads as follows:
 

 “Debts and Demands Fixed by Law. The auditor shall issue warrants on the treasurer for all debts and demands against the county when the
 
 amounts are fixed by law or are authorized by law
 
 to be allowed by a person or tribunal other than the board.” (Emphasis added.)
 

 In
 
 County of Calaveras
 
 v.
 
 Poe,
 
 167 Cal. 519 [140 P. 23], an action by the county against an officer who was at the same time county clerk, county auditor, and county recorder, for moneys wrongfully paid out, was upheld. He employed a copyist without authority of law and was held liable for the salary unlawfully paid out. At page 521 the court says:
 

 “Appellant contends that there is no statutory provision for the recovery of money paid upon the warrants approved in good faith by an
 
 auditor.
 
 He denies that any such authority arose under section 4005b of the Political Code because that section authorizes the district attorney to institute suit against the person or persons in whose favor the warrant or warrants not authorized by law shall have been drawn, when such persons shall have received the money. It may be forcibly argued that section 4005b of the Political Code does apply to defendant Poe because in contemplation of law the money paid to his copyist was an increase of his compensation and therefore might be regarded as a payment to him. The section cited is not, however, the only statute which the plaintiff might invoke to sustain this action. The office of auditor is created by statute. The duty of the defendant
 
 as auditor
 
 was to refuse to sanction any illegal claim against the county. His official obligations were fixed by statute (Pol. Code, see. 4091 et seq), and he might only issue warrants for debts or demands against the county which were
 
 *892
 

 authorized
 
 by law to bo allowed to some person.” (Emphasis added.)
 

 We conclude that the auditor would be liable under the provisions of section 26525, Government Code, as well as liable for violation of his general statutory duty in allowing the claim of the reporter, Milotz, in this case if it were properly alleged and proven, as heretofore pointed out, that the transcripts, together with the affidavits of the reporter as provided for were not filed as required by section 869, Penal Code.
 

 We have not overlooked the fact that this ease presents features of hardship, and while no intentional wrong was done by any of the parties participating in paying or receiving the illegal payments, it appears that the provisions of section 869, Penal Code, were not complied with by the reporter or the auditor, and good faith does not alter the principles and precedents which are binding upon the defendants.
 

 The judgment is reversed and the trial court is directed to permit plaintiff to amend its complaint if it be so advised.
 

 Turrentine, P. J., and Burch, J., concurred.