[Civ. No. 16166. Fourth Dist., Div. One. Aug. 9, 1978.]

CITY OF EL CAJON et al., Plaintiffs and Appellants, v.
GERALD J. LONERGAN, as Auditor and Controller, etc.,
Defendant and Respondent.

**COUNSEL**

Lynn R. McDougal and Debra A. Greenfield for Plaintiffs and Appellants.

Donald L. Clark, County Counsel, and Ernestine Douglas Littlejohn, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**STANIFORTH, J.**—The City of El Cajon (El Cajon) sought a writ of mandate to compel Gerald J. Lonergan, San Diego County Auditor (Auditor), to comply with instructions given him by the Comprehensive Planning Organization of the San Diego Region (CPO) to disburse $1,165,000 to El Cajon from the Local Transportation Fund (LTF) held on deposit in the San Diego County treasury. El Cajon and CPO contend the disbursement was authorized by the Mills-Alquist-Deddeh Act (the MAD Act). (Cal. Pub. Util. Code, § 99200 et seq.)

The Auditor refused to honor the directive from CPO upon the ground the CPO allocation of LTF monies to El Cajon was illegal under Public Utilities Code section 99232. El Cajon proposes to use these funds for local street purposes.

Upon trial, the court refused to issue the writ of mandate: it would compel the drawing of a warrant to pay an illegal claim. Pending appeal by El Cajon and CPO, the Auditor was enjoined from transferring all or part of the $1,165,000.

FACTS

The facts are not in dispute. El Cajon is an incorporated general law city. CPO is a regional planning agency created by the Joint Powers Agreement (Gov. Code, § 6500 et seq.) comprised of the County of San Diego and all cities in the County of San Diego. CPO was created and exists to engage in regional cooperative comprehensive planning. Gerald J. Lonergan is the Auditor and Controller of the County of San Diego.

El Cajon contracted for public transportation services in the City of El Cajon with the San Diego Transit Corporation (Transit), a nonprofit corporation wholly owned by the City of San Diego. Transit operates a mass transportation system in the City of San Diego and its environs including the incorporated area of the City of El Cajon.

Government Code section 29530 et seq. authorizes a special trust account in the San Diego County treasury called the Local Transportation Fund consisting of monies derived from sales and use taxes. Such a fund has been established in the San Diego County treasury with the Auditor serving as trustee. (Cal. Admin. Code, tit. 21, § 1623.)[1]

The board of supervisors appropriates the money in the LTF for statutorily allowed purposes. (MAD Act, § 99200 et seq.) The CPO is the local transportation planning agency authorized to consider claims on and to make allocations from the LTF. In 1975 these claims and allocations under the MAD Act fell in three basic areas: pedestrian and bicycle claims under Public Utilities Code section 99234; public transit claims under article 4 (commencing with Pub. Util. Code, § 99260); and local streets and roads claims under article 8 (commencing with Pub. Util. Code, § 99400).

Within this statutory framework of interrelated authorities, these critical events occurred: On June 16, 1975, CPO approved by its resolution No. 75-56 the allocation of $1,165,000 to the City of El Cajon for the purpose of improving certain public streets within the city limits of El Cajon—an article 8 claim. CPO thereafter sent instructions to the Auditor directing him to pay the funds to the City of El Cajon, in installments, commencing August 20, 1975. Upon the authority of Public Utilities Code section 99232, the Auditor refused to comply with the instructions, and this action for a writ of mandate followed.

On appeal from the denial of its petition, El Cajon and CPO make the following contentions: (1) The Auditor lacked authority to challenge the allocation of the $1,165,000 made by the CPO, (2) Public Utilities Code section 99232, relied upon by the Auditor for his belief that the allocation was illegal, was not a bar; and (3) the CPO's rule making powers authorized the allocation.

---

[1] In this opinion all statutes and administrative regulations will be considered, and quoted, *as they read in June 1975.*

## Issues

■ It is the Auditor's position that he was authorized to make payments from LTF only for purposes specified by the Transportation Development Act. (Gov. Code, § 29530 et seq.) Government Code section 29532 reads in pertinent part: "*Out of the funds appropriated pursuant to Section 29531,* the county auditor shall pay to public transportation entities such amounts as are allocated by the transportation planning agencies designated by the Secretary of the Business and Transportation Agency as follows: . . . ." (Italics added.)

The "funds appropriated" by the board of supervisors are circumscribed, limited to "purposes specified." Government Code section 29531 reads: "The board of supervisors shall continuously appropriate the money in such fund for expenditure *for the purposes specified in this article and in Chapter 4 (commencing with Section 99200) of Part II of Division 10 of the Public Utilities Code.*" (Italics added.)

We conclude the authority of the Auditor to pay LTF claimants is expressly limited to funds appropriated for the statutory purposes specified in Government Code section 29530 et seq. and those specified in the MAD Act. (Pub. Util. Code, § 99200 et seq.) Here no funds had been appropriated by the board of supervisors for local streets and road expenditures in the City of El Cajon because of the perceived limitations contained in section 99232 of the MAD Act.

■ El Cajon argues Government Code section 29532 makes the Auditor's duty a ministerial one: to disburse the money in the local transportation fund as instructed by CPO. El Cajon relies upon this language: "From the funds allocated pursuant to section 29531, the Auditor shall pay . . . ." El Cajon contends, in absence of other authority, the Auditor's authority was controlled by California Administrative Code, title 21, section 1621, which directed the Auditor to make payments from the LTF solely in accordance with allocation instructions and, in the event of uncertainty, to *refer* the matter back to CPO. In sum, they assert the Auditor had no power to override CPO's action. El Cajon also claims the various statutes prohibiting the Auditor from making illegal payments apply only to *county funds,* not to funds merely deposited in the county treasury.

The Auditor's general statutory duty of care applies to *all* money payable into the county treasury by virtue of official authority (Gov.

Code, § 26902; 29 Ops. Cal. Atty. Gen. 114); this includes deposits made under Government Code section 29530.

With respect to all monies payable into the county treasury, the Auditor's disbursements thereof are subject to these, among other, controls: "Any contract, authorization, allowance, *payment,* or liability to pay, made or attempted to be made *in violation of law, is void, and shall not be the foundation or basis of a claim against the treasury of any county.*" (Gov. Code, § 23006; italics added.) "*Any officer* authorizing, aiding to authorize, auditing, allowing, or *paying any claim* or demand upon or *against the treasury of any county, or any fund thereof, in violation of law* or of the constitution *is liable* personally and upon his official bond to the person damaged by such illegal action, to the extent of his loss by reason of the nonpayment of his claim." (Gov.Code, § 24054; italics added.) And the Auditor has personal liability—even absent specific statutory assignment of liability—for allowing a disbursement for an invalid claim.

In *County of San Diego* v. *Milotz,* 119 Cal.App.2d Supp. 871, 891 [260 P.2d 282], the court said: "An auditor who draws the warrant without authority of law is liable without specific statutory liability for the disbursements made, even though he did not receive any of the funds disbursed, because it is his general statutory duty to order, examine, allow, and order paid, only valid claims against the county."

More recently in *Stanson* v. *Mott,* 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1], the California Supreme Court held that a public official who, in good faith, authorizes the improper expenditure of public funds is personally liable to repay such funds only if he failed to exercise due care in permitting the expenditure.

The court in *Stanson* further points out: In determining whether a public official who, in good faith authorized an improper expenditure of public funds, failed to exercise due care in permitting the expenditure so as to be personally liable to repay such funds, one relevant consideration is: was the official alerted to the possible invalidity of the expenditure. (*Stanson* v. *Mott, supra,* at p. 227; see also *County of Shasta* v. *Moody,* 90 Cal.App. 519, 524 [265 P. 1032]; 35 Ops. Cal. Atty. Gen. 112, 113.)

Here the Auditor was alerted from several responsible sources to the possible invalidity of the expenditure: (1) through his awareness of the provisions of the MAD Act, (2) through the finding of the Secretary of Business and Transportation that the law does not permit an article 8 (local streets and roads) expenditure in the City of El Cajon, and (3) from the written opinion of CPO's own legal counsel advising of the illegality.

Nor did California Administrative Code, title 21, section 1621, compel the Auditor to approve of an illegal allocation: "The county auditor shall make payments from the local transportation fund balance—*available* solely in accordance with allocation instructions received from the designated transportation planning agency. The county auditor, in the event of uncertainty, shall immediately refer the matter to the transportation planning agency, unless it is the designation of the transportation planning agency which is in doubt, in which case the auditor shall refer the matter to the Secretary, for clarification. The county auditor shall make no payments while in receipt of a notice from the Secretary of rescission of designation as a transportation planning agency until such time as the Secretary delivers a further designation to the auditor." (Italics added.)

The "uncertainties" referred to in section 1621 referred to the language of the allocation instructions from CPO. A reading of the section as urged by El Cajon would compel the Auditor to follow blindly any allocation instruction he received from the CPO—legal or illegal. Such an interpretation could lead to misuse of the LTF. The Auditor could by operation of law become personally liable for such fees. The Legislature did not intend so destructive a process to flow from section 1621. The contention is without merit.

■ El Cajon next contends section 99232 of the MAD Act did not bar the allocation for street repair purposes here. This section specifically prohibits certain allocations. If applicable here, it prohibits article 8 allocations of the type made to El Cajon. Section 99232 then provided: "For counties with a population of 500,000 or more, as determined under Section 28020 of the Government Code, as now or hereafter amended, but excluding counties with more than 4,500 miles of maintained county roads, *the amount representing the apportionments of the areas of all operators shall be available solely for claims for Section 99234 purposes and for Article 4 (commencing with Section 99260) purposes,* and any such

moneys not allocated in any year shall be available for such claims in subsequent years." (Italics added.) The County of San Diego has a population of over 500,000.

As previously noted, El Cajon contracts with Transit, a nonprofit corporation wholly owned and controlled by the City of San Diego. By this contract Transit renders public transportation services within El Cajon's corporate area.

Further, Transit is an operator by virtue of sections 99210 and 99209: " '*Operator*' means any transit district, included transit district, *municipal operator,* included municipal operator, or transit development board." (Pub. Util. Code, § 99210; italics added.)

"Municipal operator" is defined in section 99209 as follows: " '*Municipal operator*' means a *city* or county, *including any nonprofit corporation* or other legal entity *wholly owned or controlled by the city* or county, which operates a public transportation system, or which on July 1, 1972, financially supported, in whole or in part, a privately owned public transportation system, and which is not included, in whole or in part, within an existing transit district." (Pub. Util. Code, § 99209; italics added.)

Section 99231 defined the *area* of an *operator* in subdivision (d)(2) in these terms: "The term 'area' means:

(d) Where a transit district, or a county or *city,* provides public transportation services *beyond its boundaries, its area, for purposes of this section,* shall also include: [¶] . . . (2) *All of the corporate area of a city to which it provides such services pursuant to contract or prior express authority of the secretary."* (Italics added.)

El Cajon contends section 99231 did not define the area of a "municipally owned transportation system" and therefore did not apply to Transit. However, a reading of sections 99210, 99209 and 99231 *in pari materia* leaves no doubt but the term "city" as used in section 99231,

subdivision (d) included "any non-profit corporation . . . wholly owned or controlled by the city. . . ." Transit fit that definition precisely.

Since Transit by contract provided public transportation services beyond its boundaries into the corporate area of the City of El Cajon, its apportionment area included El Cajon; it was the "operator" for that area. Section 99232 restricted apportionments to such area solely for transit purposes, i.e. solely for claims under section 99234 and article 4; therefore the City of El Cajon was precluded from filing a claim for repair of its local streets under article 8. CPO's attempted allocation to El Cajon was illegal, barred by section 99232.

As is patent, this decision was based upon the court's reading and interpretation of the relevant statutes. Any error in admitting testimony by Senator Mills reiterating his statements to the Legislature before the act was passed is not prejudicial. (*Tillie Lewis Foods, Inc.* v. *City of Pittsburg,* 52 Cal.App.3d 983 [124 Cal.Rptr. 698]; cf. *Rich* v. *State Board of Optometry,* 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512].)

Finally, there is no merit in El Cajon's contention that the allocation by the CPO can be sustained under its ruling making authority. CPO has no authority contrary to the statute. (MAD Act, § 99261.)

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.