[Civ. No. 25620. Third Dist. Nov. 25, 1986.]

CITY OF SACRAMENTO, Plaintiff and Appellant, v.
CALIFORNIA STATE LEGISLATURE, Defendant and Respondent.

394

---

**COUNSEL**

James P. Jackson, City Attorney, and William P. Carnazzo, Deputy City Attorney, for Plaintiff and Appellant.

Bion M. Gregory, James L. Ashford, Amelia I. Budd and Mark Franklin Terry for Defendant and Respondent.

## OPINION

**BLEASE, J.**—The City of Sacramento (City) appeals from a judgment dismissing the Legislature from an action in which it seeks to compel the Legislature to appropriate money. Its purpose is to secure a reimbursement, pursuant to article XIII B, section 6 of the California Constitution, of costs it expended in compliance with a state-mandated unemployment insurance program. We will affirm the judgment (order of dismissal) on the ground that the judiciary has no power, under the doctrine of separation of powers, to grant such relief.

### FACTS AND PROCEDURAL BACKGROUND

The circumstances giving rise to this action are set out in a prior opinion, *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182 [203 Cal.Rptr. 258] (hereafter *Sacramento* v. *State*). We briefly recapitulate. The Legislature in 1978, by statute, required all local government employers to participate in the unemployment insurance system. In 1979 the electorate enacted an amendment to the California Constitution which says, in pertinent part: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, . . . ." (Cal. Const., art. XIII B, § 6.) In *Sacramento* v. *State, supra,* we upheld a peremptory writ of mandate compelling the State Board of Control to grant the City a hearing concerning its claim for reimbursement of costs of participation in the unemployment insurance system. (*Id.,* at p. 199.) We held that this statutory mandate was subject to the reimbursement requirement of the constitution. (*Ibid.*)

Following this decision, the City pursued its claim before the State Board of Control. The board concluded that eligibility for reimbursement of costs commenced when the statutory mandate to participate in the unemployment insurance program took effect, January 1, 1978. The City participates in the unemployment insurance program under a system in which the California Employment Development Department makes payments to unemployed city

workers and is reimbursed by the City. The City seeks repayment of all of the amounts it has in this manner paid the state.

Subsequent to the commencement of this action the Legislature enacted Statutes 1985, chapter 1217. Chapter 1217 appropriates moneys to reimburse the costs of the unemployment insurance program for the fiscal years 1984-1985 and 1985-1986, i.e., July 1, 1984 through June 30, 1986. (Stats. 1985, ch. 1217, §§ 12, 17, subd. (b).)

The City named the Legislature as a defendant in this action, alleging: "Legislature has no discretion as to whether to appropriate funds to reimburse for all of City's costs associated with Chapter 2/78. Appropriation for such costs is a non-discretionary, ministerial act which Legislature, despite repeated demand and despite its specific awareness of Article XIIIB, § 6 and of *City of Sacramento* v. *State,* supra, has deliberately and stubbornly refused to perform." It sought a writ of mandate commanding the Legislature to appropriate funds for the reimbursement of all costs associated with the City's compliance with the mandate from the inception of its participation in the unemployment insurance program.

The Legislature demurred to the complaint on the ground that it is not a proper party to the action. The demurrer was sustained without leave to amend. The City appeals from the ensuing judgment of dismissal.

### DISCUSSION

The City acknowledges the fundamental rule that the separation of judicial from legislative powers precludes the judiciary from ordering the enactment of an appropriation, but argues that the rule should allow an exception when the Legislature's duty to do so is ministerial. We disagree.

"The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." (Cal. Const., art. IV, § 1.) "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant." (Cal. Const., art. XVI, § 7.) The appropriation of moneys is a legislative function. (Cal. Const., art. IV, §§ 1 and 12.)

The cases construing these provisions uniformly hold that courts are prohibited "from directly ordering the Legislature to enact a specific ap-

propriation . . . ." (*Mandel* v. *Myers* (1981) 29 Cal.3d 531, 540 [174 Cal.Rptr. 841, 629 P.2d 935].) ■ Indeed, the broader rule is that mandamus will not lie to compel the Legislature to enact any legislation. (See Annot., Mandamus to Members or Officer of Legislature (1942) 136 A.L.R. 677, 679-680; 52 Am.Jur.2d, Mandamus, § 131, p. 267.)

An emphatic and eloquent statement of the rule is given in *Myers* v. *English* (1858) 9 Cal. 341, 349: "We think the power to collect and appropriate the revenue of the State is one peculiarly within the discretion of the Legislature. It is a very delicate and responsible trust, and if not used properly by the Legislature at one session, the people will be certain to send to the next more discreet and faithful servants.

"It is within the legitimate power of the judiciary, to declare the *action* of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of *non-action*. The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the body possessing the power of taxation. There may arise exigencies, in the progress of human affairs, when the first moneys in the treasury would be required for more pressing emergencies, and when it would be absolutely necessary to delay the ordinary appropriations for salaries. We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one."

The City cites to no case in which a court has issued an order to a Legislature to appropriate funds. We are invited to create an unprecedented exception to the contrary rule on the ground that the duty to appropriate funds to reimburse the City under article XIII B, section 6, is patent and the amount "owed" is capable of certain calculation. ■ The City does not claim, nor could it, that article XIII B, section 6, by its terms, requires that the judiciary provide such a remedy. In fact, the section contains no remedy.

The City suggests that the need for departing from precedent is great because otherwise the will of the electorate embodied in article XIII B, section 6, will be frustrated. The difficulty with the City's argument is that it applies in every instance in which a claim of this nature is tendered. Such a claim always rests on some mandatory constitutional provision; how else could we be called upon to check the Legislature? But this has never sufficed to breach the rule. If the electorate is willing it may directly enact an appropriation. In the absence of such an explicit expression of the People's

will we will not indulge the presumption that we can discern it more faithfully and accurately than the political branches.

■ The City argues that an exception is justified because the duty of the Legislature is mandatory and so well defined that the Legislature has no discretion upon which we might encroach. It must be admitted that the presence of a mandatory duty that is clearly specified is a significant consideration. (See *Jenkins* v. *Knight* (1956) 46 Cal.2d 220 [293 P.2d 6].) "Where political power is vested in a public officer, he is responsible only in his political character to the country. Where discretion is vested in him, he but conforms to the law in exercising that discretion. But where a question of political power is not involved, where no discretion exists, but a specific legal duty is imposed, ministerial in its character, such as the issuance of a patent, the delivery of a commission, the payment of a specific sum, or the drawing of a particular warrant, and in the performance of that duty individuals have a direct pecuniary interest, the officer, like any other citizen, is subject to the process of the regularly constituted tribunals of the country." (*McCauley* v. *Brooks* (1860) 16 Cal. 11, 54-55, overruled on other grounds in *Stratton* v. *Green* (1872) 45 Cal. 149.)

If article XIII B, section 6, is read to require an appropriation of moneys for the reimbursement of mandated costs,[1] the matter is nonetheless one in which political power to accomplish that end is vested in the Legislature. "Under our form of government the judicial department has no power to revise even the most arbitrary and unfair action of the legislative department, or of either house thereof, taken in pursuance of the power committed exclusively to that department by the constitution." (*French* v. *Senate* (1905) 146 Cal. 604, 606 [80 P. 1031].) The legislative power to enact laws, including appropriations, is committed exclusively to the legislative department by the Constitution. (See Cal. Const., art. IV, §§ 1 and 12.)

■ The focus in questions of separation of powers is "the degree to which [the] governmental arrangements comport with, or threaten to un-

---

[1]Even given this assumption, there still remains the residual question whether the provision was meant to preclude the Legislature from exercising discretion to defer making part or all of the appropriation in view of the other demands on the fisc, many of which are grounded on constitutional mandates. (See Cal. Const., art. IV, § 12, subd. (e); see generally *Myers* v. *English, supra,* 9 Cal. at p. 349; Comment, *State Court Assertion of Power to Determine and Demand Its Own Budget* (1972) 120 U. Pa.L.Rev. 1187, 1198-1199, Note, *Mandel* v. *Myers: Judicial Encroachment on Legislative Spending Powers* (1982) 70 Cal.L.Rev. 932, 954-956.) Article XIII B, section 6, provides no explicit rule concerning the situation presented in this case. It is an open question whether it requires appropriations for past years when the Legislature has completed its annual budget process under the misapprehension that no reimbursement of costs was warranted.

dermine, either the *independence and integrity* of one of the branches or levels of government, or the ability of each to fulfill its mission in checking the others so as to preserve the *interdependence* without which independence can become domination." (Tribe, American Constitutional Law (1978) p. 15; fn. omitted.) A ruling that orders the Legislature to enact an appropriation necessarily implicates the independence and integrity of the Legislature and its ability to fulfill its mission in checking its coequal branches. The judgment of the judiciary concerning the construction of the language of the Constitution and the laws "can only be controlled by its intelligence and conscience." (*McCauley* v. *Brooks, supra,* 16 Cal. at p. 39.) It functions as the constitutional auditor. The danger of concentrating the power to audit and the power to spend in the same branch is manifest.

A separation of powers does allow for some incidental overlap of function. (E.g., *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 115 [145 Cal.Rptr. 674, 577 P.2d 1014].) But a judicially compelled enactment of legislation is not an incidental overlap; it is the very exercise of legislative power itself. "One branch of the Government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." (*Union Pacific R.R. Co.* v. *United States* (1879) 99 U.S. 700, 718 [25 L.Ed. 496, 501].)

The judgment (order of dismissal) is affirmed.

Puglia, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 1987.